**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

GREAT WEST CASUALTY COMPANY,

Plaintiff,

v.

LEXINGTON INSURANCE COMPANY
Serve at: Commissioner of Insurance
Attn: Legal Division
Kansas Insurance Department
420 SW 9th Street
Topeka, Kansas 66612,

AND,

CAROLINA CASUALTY INSURANCE COMPANY,
Serve at: Commissioner of Insurance
Attn: Legal Division
Kansas Insurance Department
420 SW 9th Street
Topeka, Kansas 66612

Defendants.

Case No. 2:17-cv-02514

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Great West Casualty Company ("Great West"), by and through counsel, seeks declaratory relief pursuant to 28 U.S.C. § 2201 against Defendant Lexington Insurance Company ("Lexington") and Defendant Carolina Casualty Insurance Company ("Carolina"), and further states and alleges:

**PARTIES**

1. Great West is an insurance company organized under the laws of the State of Nebraska with its principal place of business in South Sioux City, Nebraska.

2. Lexington is an insurance company organized under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts, and doing business by agent or otherwise in the State of Kansas.

3. Carolina is an insurance company organized under the laws of the State of Iowa with its principal place of business in Jacksonville, Florida, and doing business by agent or otherwise in the State of Kansas.

## JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because this is a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this dispute occurred in this District and/or one or more of the defendants resides in this District and/or a substantial part of the property that is the subject of this action is situated in this District.

6. This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201.

## FACTUAL ALLEGATIONS

7. Great West issued a commercial auto policy to Midwest Transport Specialists, Inc. ("Midwest Transport") as the named insured, Policy Number MCP06377A, with a policy period of October 13, 2013 to October 1, 2014 ("Great West Policy"). A true and correct copy of the Great West Policy is attached hereto as **Exhibit A.**

8. The Great West Policy has a $1 million limit of liability per occurrence.

9. The Great West Policy was issued to Midwest Transport in Kansas.

10. Carolina issued a commercial auto policy to Jack Cooper Transportation Company. Inc. ("Jack Cooper") as the named insured, Policy No. CGT_360955_P, with a policy period of July 1, 2013 to October 1, 2014 ("Carolina Primary Policy"). A true and correct copy of the Carolina Primary Policy is attached hereto as **Exhibit B**.

11. The Carolina Primary Policy has a $1 million limit of liability per occurrence.

12. The Carolina Primary Policy was issued to Jack Cooper in Missouri.

13. Lexington issued a Follow Form Excess Liability Policy to Jack Cooper as the named insured, Policy No. 048409893, with a policy period of October 1, 2013 to October 1, 2014 ("Lexington Excess Policy"). A true and correct copy of the Lexington Excess Policy is attached hereto as **Exhibit C**.

14. The Lexington Excess Policy for Jack Cooper has a $4 million limit of liability per occurrence.

15. The Lexington Excess Policy was issued to Jack Cooper in Missouri.

16. Midwest Transport is a transportation and logistics services company organized under the laws of the State of Kansas with its principal place of business in Kansas City, Kansas.

17. Jack Cooper is a transportation and logistics services company organized under the laws of the State of Delaware with its principal place of business in Kansas City, Missouri.

18. On or about June 25, 2014, Jack Cooper hired Midwest Transport to drive a 2004 Freightliner tractor and a trailer from Atlanta, Georgia to Warren, Ohio.

19. The 2004 Freightliner tractor and a trailer were both owned by Jack Cooper.

20. Midwest Transport charged Jack Cooper the sum of $1,665 for its driver services and issued an invoice for same to Jack Cooper. A true and correct copy of the invoice is attached hereto as **Exhibit D**.

21. The invoice sets forth:

> "[t]his document serves as the release, bill of lading and authorization to transport the equipment listed below VIN number [sic] per the owners [sic] consent. Owner authorizes Midwest Transport Specialist Representative to pick up equipment and transfer as they [sic] desire." The invoice further stated "[q]uoted charges cover the fuel, insurance, tags, and administration expenses. Customer is responsible for All Permits and Tolls. The customer will be responsible for any repairs, fluids, driver detention time due to trucks not ready or needing mechanical repairs. Rates quoted do not include coverage for broken glass, stone chips, blown tires or damage from blown tires."

*See* **Exhibit D**.

22. The invoice is not a written lease agreement. *See* **Exhibit D**.

23. Midwest Transport and Jack Cooper did not enter into any other agreements relating to this transaction.

24. The driving services requested by Jack Cooper from Midwest Transport were provided by Lawrence Cleaveland ("Cleaveland"), a Midwest Transport employee.

25. On July 2, 2014, Cleaveland drove Jack Cooper's tractor and attached trailer north on Interstate 75 through Kentucky. At approximately 2:10 p.m., just one mile south of Corinth, Kentucky, the tractor's driveshaft detached and fell onto the roadway into the path of two motorcyclists, Daniel Goerdt and Jennifer Goerdt.

26. On March 23, 2015, the Goerdts filed a personal injury lawsuit against Midwest Transport, Cleaveland, and Jack Cooper in the United States District Court for

the Eastern District of Kentucky, Case No. 2:15-cv-00034, seeking damages for their injuries sustained on July 2, 2014 ("Goerdt Lawsuit"). A true and accurate copy of the Goerdt Lawsuit is attached hereto as **Exhibit E**.

27. In the Goerdt Lawsuit, the Goerdts assert claims for negligence and negligence *per se* against all three defendants, seeking a judgment imposing joint and several liability for their damages. *See* **Exhibit E.**

28. Jack Cooper is currently being provided a defense in the Goerdt Lawsuit by its primary insurer Carolina pursuant to the Carolina Primary Policy.

29. Pursuant to and subject to the terms of the Great West Policy and Great West's reservation of rights, Great West has accepted Jack Cooper's tender of the defense of the Goerdt Lawsuit on an excess basis only.

30. Upon information and belief, Carolina has yet to exhaust the Carolina Primary Policy.

31. Midwest Transport and Cleaveland are currently being provided a defense in the Goerdt Lawsuit by Great West.

32. Pursuant to and subject to the terms of the Carolina Primary Policy, the Lexington Excess Policy, and the Great West Policy, Great West reverse tendered the defense and indemnity of Midwest Transport and Cleaveland to Jack Cooper on May 10, 2016. A true and correct copy of this letter is attached hereto as **Exhibit F**.

33. Carolina agrees the Carolina Primary Policy insures Jack Cooper, Midwest Transport, and Cleaveland. A true and correct copy of this September 23, 2016 letter is attached hereto as **Exhibit G**, p. 3.

34. Jack Cooper or Carolina have yet to respond to Great West's reverse tender.

## THE GREAT WEST POLICY

35. The Great West Policy contains the following insuring agreement for liability for bodily injury and property damage:

**A. Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> . . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages. . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. . . .

COMMERCIAL AUTO COVERAGE PART, SECTION II – LIABILITY COVERAGE, A., **Exhibit A**, p.56.

36. Under the Great West Policy, "Insured" means:

**1. WHO IS AN INSURED**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire, or borrow...

**c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to

another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

...

COMMERCIAL AUTO COVERAGE PART, SECTION II – LIABILITY COVERAGE, A. Coverage, 1., **Exhibit A**, p. 56.

37. The Great West Policy also contains the following "Other Insurance" provisions:

> 5. OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS
>
> a. While any covered "auto" is hired or borrowed from you by another "motor carrier" this coverage form's liability coverage is:
>
> (1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee required you to hold the lessee harmless.
>
> (2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.
>
> b. While any covered "auto" is hired or borrowed by you from another "motor carrier" this coverage form's liability coverage is:
>
> (1) Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless and then only while the covered

101508028 v.1

      "auto" is used exclusively in your business as a "motor carrier" for hire.

(2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

c. While a covered "auto" which is a "trailer" is connected to a power unit, this coverage form's Liability Coverage is:

(1) Provided on the same basis, either primary or excess, as the liability coverage provided for the power unit if the power unit is a covered "auto."

(2) Excess if the power unit is not a covered "auto."

d. Any Trailer Interchange coverage provided by this Coverage Form is primary for any covered "auto."

e. Except as provided in Paragraphs a., b., c. and d. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you do not own.

COMMERCIAL AUTO COVERAGE PART, SECTION V – MOTOR CARRIER CONDITIONS, B. GENERAL CONDITIONS, 5., **Exhibit A**, p.65-66.

**THE LEXINGTON EXCESS POLICY**

38. The Lexington Excess Policy contains the following insuring agreement for liability for bodily injury and property damage:

I. INSURING AGREEMENT

  A. We will pay those sums that the Insured becomes legally obligated to pay as Loss Amounts in excess of the Underlying Limits by reason of exhaustion of such limits and to which this insurance applies, subject to:

   1. the terms and conditions of the Followed Policy, and

   2. the Limits of Insurance shown in the Declarations.

  B. Except with regard to: (1) the premium, (2) limits of insurance, (3) our defense obligations, (4) any endorsement changing the terms or conditions of this policy, and (5) other terms or conditions of this policy inconsistent with the Followed Policy, the provisions of the Followed Policy are incorporated as part of this policy.

FOLLOW FORM EXCESS LIABILITY POLICY, I., A. and B., **Exhibit C**, p.6.

  39. Under the Lexington Excess Policy, "Loss Amounts" means:

damages and Defenses Expenses, if Defense Expenses are included within the limit of insurance of the Followed Policy. Otherwise, Loss Amounts means damages only.

FOLLOW FORM EXCESS LIABILITY POLICY, V. DEFINITIONS, F., **Exhibit C**, p.8.

  40. Regarding Loss Amounts, the Lexington Excess Policy contains the following notice in bold capital letters at the top of the form:

**NOTICE: LOSS AMOUNTS MAY INCLUDE DEFENSE EXPENSES, IF DEFENSE EXPENSES ARE INCLUDED WITHIN THE LIMITS OF INSURANCE OF THE FOLLOWED POLICY. IF DEFENSE EXPENSES ARE NOT INCLUDED WITHIN THE LIMITS OF INSURANCE IN THE FOLLOWED POLICY, THEN SUCH EXPENSES ARE IN ADDITION TO THE LIMITS OF INSURANCE OF THIS POLICY.**

FOLLOW FORM EXCESS LIABILITY POLICY, **Exhibit C**, p. 6.

  41. The Lexington Excess Policy defines "Followed Policy" as follows:

  D. Followed Policy means the policy shown in Item 6. of the Declarations.

FOLLOW FORM EXCESS LIABILITY POLICY, V. DEFINITIONS, D., **Exhibit C**, p.8.

42. Item 6. of the Declarations to the Lexington Excess Policy refers to the Schedule of Underlying Insurance for an identification of the "Followed Policy". FOLLOW FORM EXCESS LIABILITY POLICY, Declarations, **Exhibit C**, p.4.

43. The Schedule of Underlying Insurance lists the Carolina Primary Policy as the only Commercial Auto Liability "Followed Policy". FOLLOW FORM EXCESS LIABILITY POLICY, Schedule of Underlying Insurance, **Exhibit C**, p. 5.

44. The Declarations in the Lexington Excess Policy also contain the following Item 7.:

> Total Occurrence Limits of Insurance of all Underlying Policies in excess of which this policy applies: $1,000,000. Our defense obligations only apply in excess of the Total Aggregate Limits of Insurance of all Underlying Policies.

FOLLOW FORM EXCESS LIABILITY POLICY, Declarations, **Exhibit C**, p.4.

45. The Lexington Excess Policy defines "Underlying Policies" as follows:

> J. Underlying Policies means any underlying policies, including the Followed Policy.

FOLLOW FORM EXCESS LIABILITY POLICY, V. DEFINITIONS, J., **Exhibit C**, p.8.

46. The Lexington Excess Policy defines "Underlying Limits" as follows:

> I. Underlying Limits means the sum of:
>
> 1. The Aggregate Limits of Insurance of all Underlying Policies.
> 2. All retentions or self-insured retentions applicable to such Underlying Policies, and
> 3. Other insurance (including any self-insurance retentions) applicable to any Claim that is covered by this policy.

FOLLOW FORM EXCESS LIABILITY POLICY, V. DEFINITIONS, I., **Exhibit C**, p.8.

## CAROLINA PRIMARY POLICY

47. The Carolina Primacy Policy contains the following insuring agreement for liability for bodily injury and property damage:

**A. Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> . . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages. . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. . . . Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

MOTOR CARRIER COVERAGE FORM, SECTION II – LIABILITY COVERAGE, A., **Exhibit B,** p.31-32.

48. Under the Carolina Primary Policy, "insureds" includes "[a]nyone else while using with your permission a covered "auto" you own, hire or borrow ..."Insured" further includes "[a]nyone liable for the conduct of an "insured" described above but only to the extent of that liability." MOTOR CARRIER COVERAGE FORM, SECTION II – LIABILITY COVERAGE, A. Coverage, 1. Who is An Insured, b. and e., **Exhibit B**, p. 32.

49. Under the Carolina Primary Policy, "auto" includes any auto, which includes a land motor vehicle, trailer or semitrailer designed for travel on public roads,

or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. TRUCKERS/MOTOR CARRIER COVERAGE FORM DECLARATIONS; MOTOR CARRIER COVERAGE FORM, SECTION I – COVERED AUTOS, A. Description Of Covered Auto Designation Symbols; and SECTION VI-DEFINITIONS, B., 1. and 2., **Exhibit B**, p. 6, 30, and 41.

50. Under the Carolina Primary Policy, "Liability Coverage Limit of Insurance" is $1 million. TRUCKERS/MOTOR CARRIER COVERAGE FORM DECLARATIONS, **Exhibit B**, p.6.

51. The Carolina Primary Policy also contains the following "Other Insurance" provisions:

> 5. OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS
>
> a. While any covered "auto" is hired or borrowed from you by another "motor carrier" this coverage form's liability coverage is:
>
> (1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee required you to hold the lessee harmless.
>
> (2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

    b.    While any covered "auto" is hired or borrowed by you from another "motor carrier" this coverage form's liability coverage is:

        (1)    Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

        (2)    Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

    c.    While a covered "auto" which is a "trailer" is connected to a power unit, this coverage form's Liability Coverage is:

        (1)    Provided on the same basis, either primary or excess, as the liability coverage provided for the power unit if the power unit is a covered "auto."

        (2)    Excess if the power unit is not a covered "auto."

    d.    Any Trailer Interchange coverage provided by this Coverage Form is primary for any covered "auto."

    e.    Except as provided in Paragraphs a., b., c. and d. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you do not own.

MOTOR CARRIER COVERAGE FORM, SECTION V – MOTOR CARRIER CONDITIONS, B. General Conditions, 5., **Exhibit B**, p.40.

**COUNT I**

**DECLARATION THAT THE GREAT WEST POLICY IS EXCESS TO THE LEXINGTON EXCESS POLICY, FOR JACK COOPER, MIDWEST TRANSPORT, AND CLEAVELAND, IN THE GOERDT LAWSUIT**

52. Great West repeats and realleges all allegations of the Complaint as if set forth fully herein.

53. The only written document relating to Jack Cooper's hiring of Midwest Transport to transport Jack Cooper's tractor and trailer from Georgia to Ohio was the invoice. The invoice is not a written lease agreement. Therefore, Paragraphs 5.a. and b. of the Other Insurance clause of the Great West Policy do not apply.

54. Paragraphs 5.c. and 5.d. also would not apply because the trailer is not alleged to have caused the July 2, 2014 accident, but rather the driveshaft from the tractor. Alternatively, if the trailer is determined to have caused or contributed to cause the subject accident, then under part c. the coverage for the trailer is the same as the coverage determined for the tractor, and 5.e. governs the tractor's coverage.

55. Thus, under Paragraph 5.e. of the Great West Policy, for Jack Cooper, Midwest Transport, and Cleaveland, in the Goerdt Lawsuit, the Great West Policy provides only excess insurance because Midwest Transport was not the owner of the covered "auto" involved in the July 2, 2014 accident, and Paragraphs 5.a., b., c., and d. of the Other Insurance clause do not provide an exception to the applicability of Paragraph 5.e. of the same.

56. For Jack Cooper, Midwest Transport, and Cleaveland, in the Goerdt Lawsuit, the Great West Policy coverage applies as an excess policy.

57. Moreover, Great West's excess coverage for Jack Cooper, Midwest Transport, and Cleaveland is triggered only if the following layers of coverage are exhausted

a. Primary - $1 million held by Carolina pursuant to the Carolina Primary Policy.

b. First excess layer - $4 million in excess of $1 million primary insurance limits, held by Lexington pursuant to the Lexington Excess Policy.

58. Lexington is the first excess layer to the Carolina Primary Policy because the Underlying Limits of the Lexington Excess Policy are exhausted by application of the Carolina Primary Policy limits, and there is no other primary insurance applicable to the Goerdts' claim.

59. Lexington has a duty to defend and indemnify Jack Cooper, Midwest Transport, and Cleaveland, including defense costs, with respect to the Goerdt Lawsuit, which duty is triggered by the exhaustion of the Carolina Primary Policy.

60. By reason of the foregoing, an actual and justiciable controversy exists between Carolina, Lexington, and Great West.

## COUNT II

### DECLARATION THAT THE LEXINGTON EXCESS POLICY IS EXCESS TO THE CAROLINA PRIMARY POLICY, FOR JACK COOPER, MIDWEST TRANSPORT, AND CLEAVELAND, IN THE GOERDT LAWSUIT

61. Great West repeats and realleges all allegations of the Complaint as if set forth fully herein.

62. The only written document relating to Jack Cooper's hiring of Midwest Transport to transport Jack Cooper's tractor and trailer from Georgia to Ohio was the invoice. The invoice is not a written lease agreement. Therefore, Paragraphs 5.a. and b. of the Other Insurance clause of the Carolina Primary Policy do not apply.

63. Paragraphs 5.c. and 5.d. also would not apply because the trailer is not alleged to have caused the July 2, 2014 accident, but rather the driveshaft from the tractor. Alternatively, if the trailer is determined to have caused or contributed to cause the subject accident, then under part c. the coverage for the trailer is the same as the coverage determined for the tractor, and 5.e. governs the tractor's coverage.

64. Thus, under Paragraph 5.e., for Jack Cooper, Midwest Transport, and Cleaveland in the Goerdt Lawsuit under the Carolina Primary Policy, the Carolina Primary Policy provides primary insurance because Jack Cooper was the owner of the covered "auto" involved in the July 2, 2014 accident, and Paragraphs 5.a., b., c., and d. of the Other Insurance clause do not provide an exception to the applicability of Paragraph 5.e. of the same.

65. For Jack Cooper, Midwest Transport, and Cleaveland in the Goerdt Lawsuit, the Lexington Excess Policy coverage applies as a follow form excess liability policy to the Carolina Primary Policy.

66. Moreover, Carolina's primary coverage for Jack Cooper, Midwest Transport, and Cleaveland is triggered by the Goerdt's claim, and exhausting the Carolina Primary Policy triggers the first excess layer provided by the Lexington Excess Policy:

1. Primary - $1 million held by Carolina pursuant to the Carolina Primary Policy.

      2.      First excess layer - $4 million in excess of $1 million primary insurance limits, held by Lexington pursuant to the Lexington Excess Policy.

67. Lexington is the first excess layer to the Carolina Primary Policy because the underlying limits of the Lexington Excess Policy are exhausted by application of the Carolina Primary Policy limits, and there is no other primary insurance applicable to the Goerdt's claim.

68. Carolina has a duty to defend and indemnify Jack Cooper, Midwest Transport, and Cleaveland, with respect to the Goerdt Lawsuit, with defense costs of Midwest Transport and Cleaveland covered as of Great West's reverse tender on May 10, 2016, until the exhaustion of the Carolina Primary Policy, which will trigger the first excess layer, provided by the Lexington Excess Policy to carry out Lexington's duty to defend and indemnify Jack Cooper, Midwest Transport, and Cleaveland, with respect to the Goerdt Lawsuit, until the exhaustion of the Lexington Excess Policy.

69. By reason of the foregoing, an actual and justiciable controversy exists between Carolina, Lexington, and Great West.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiff Great West Casualty Company seeks a declaratory judgment in its favor as follows:

    1. That Carolina owes a present duty to defend and indemnify Jack Cooper, Midwest Transport, and Cleaveland in the Goerdt Lawsuit until the Carolina Primary Policy is exhausted, with defense costs of Midwest Transport and Cleaveland covered as of Great West's reverse tender on May 10, 2016;

    2. That Lexington owes a duty to defend and indemnify Jack Cooper, Midwest Transport, and Cleaveland, including defense costs, with respect to the Goerdt Lawsuit, which duty is triggered by exhaustion of the Carolina Primary Policy;

3. That Great West owes no duty to defend or indemnify Jack Cooper, Midwest Transport, and Cleaveland in the Goerdt Lawsuit unless and until:

   a. All primary liability insurance, including but not necessarily limited to the Carolina Primary Policy, has been exhausted; and

   b. All excess liability insurance, including but not necessarily limited to the Lexington Excess Policy has been exhausted; and

4. Any other relief the Court deems just and proper.

Respectfully Submitted,

WALLACE SAUNDERS

By:______________________________

Schalie A. Johnson KS# 22762
10111 W. 87th Street
Overland Park, KS 66212
(913) 888-1000 Fax: (913) 888-1065
sjohnson@wallacesaunders.com
ATTORNEYS FOR PLAINTIFF